STATE OF NEBRASKA, APPELLEE, V.
ARTHUR LEE GALES, JR., APPELLANT.
694 N.W.2d 124

Filed March 18, 2005. No. S-04-015.

444

Susan M. Bazis, of Bazis Law Offices, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, J. Kirk Brown, Solicitor General, and Kimberly A. Klein for appellee.

James R. Mowbray and Jerry L. Soucie, for amicus curiae Nebraska Commission on Public Advocacy.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ., and SIEVERS, Judge.

GERRARD, J.

## I. NATURE OF CASE

Arthur Lee Gales, Jr., was convicted pursuant to jury verdict of two counts of first degree murder and one count of attempted second degree murder in the district court. Gales was sentenced to consecutive sentences of death on each count of first degree murder and a sentence of imprisonment for a period of not less than 50 nor more than 50 years on the count of attempted second degree murder. On appeal, this court was required, by the U.S. Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), to vacate Gales' death sentences and remand the first degree murder causes for resentencing. See *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003) (*Gales I*). Upon remand, a three-judge panel of the district court again sentenced Gales to death on each count of first degree murder. The instant appeal is Gales' automatic direct appeal to this court from his resentencing. See Neb. Rev. Stat. § 29-2525 (Cum. Supp. 2004). For the reasons that follow, we affirm the judgment of the district court.

## II. BACKGROUND

A three-count information was filed against Gales on May 22, 2001. Count I charged Gales with first degree murder based on an allegation that on or about November 12, 2000, he purposely and

with deliberate and premeditated malice or during the perpetration of a first degree sexual assault killed Latara Chandler. Count II charged first degree murder based upon an allegation that on or about November 12, Gales purposely and with deliberate and premeditated malice killed Tramar Chandler. Count III charged Gales with attempted second degree murder, alleging that on or about November 12, he intentionally, but without premeditation, attempted to kill Judy Chandler.

Gales entered pleas of not guilty to all charges. Evidence at trial revealed that Gales had been at Judy's apartment in Omaha, Nebraska, on November 11, 2000, with Judy and her children, Latara and Tramar. Judy was found near 15th and Grace Streets in Omaha on the morning of November 12. She had been severely beaten. After Judy was identified, police went to Judy's apartment to check on the children and discovered 13-year-old Latara's body, nude from the waist down, in a bedroom. Seven-year-old Tramar's body was found lying in a bathtub. Autopsies indicated that Latara was killed by manual strangulation and that Tramar died from drowning and manual strangulation. The pathologist testified that each child had suffered at least 4 minutes of compression of the neck before death. Latara had been sexually assaulted.

The State's theory of the case was that Gales and Judy left Judy's children at her apartment on the evening of November 11, 2000, and that Gales later severely beat Judy and left her for dead. The State contended that Gales realized the children were potential witnesses who could place him with Judy that evening; therefore, he went back to the apartment and killed them. The State presented DNA evidence which linked Gales to both crime scenes and excluded other potential suspects. The DNA evidence particularly linked Gales to the sexual assault of Latara. Gales did not testify or offer evidence at trial and did not dispute the State's general theory of how the children were killed; instead, his defense was that he was not the person who assaulted Judy and killed the children. However, Gales is not, for purposes of this appeal, challenging the factual basis for his convictions.

On August 27, 2001, the jury returned a verdict finding Gales guilty of two counts of first degree murder and one count of attempted second degree murder. A sentencing hearing was

conducted by the judge who presided over the trial. The court found certain aggravating circumstances to exist, and based upon those findings, Gales was sentenced to death for each of the first degree murder convictions. See *Gales I.* However, in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), the U.S. Supreme Court held with respect to Arizona's capital sentencing procedures that the Sixth Amendment precluded a sentencing judge, sitting without a jury, from finding an aggravating circumstance necessary for imposition of the death penalty. Because *Ring* was decided during the pendency of Gales' direct appeal, we were required to review his death sentences in accordance with the constitutional principle announced in *Ring.* See *Gales I.* Because Nebraska's judge-based capital sentencing procedures were functionally identical to Arizona's, we vacated Gales' death sentences. *Gales I.*

While *Gales I* was under submission to this court, the Nebraska Legislature enacted 2002 Neb. Laws, L.B. 1, of the 97th Legislature, Third Special Session, in order to satisfy *Ring.* For reasons that will be examined in more detail below, we concluded that the provisions of L.B. 1 would apply to Gales' new penalty phase proceeding.

Upon remand, the State filed a notice of aggravating circumstances, indicating its intent to produce evidence that

(1) Gales was previously convicted of a crime involving the use of violence to the person;

(2) each murder was committed in an effort to conceal the identity of the perpetrator of the crime of second degree murder;

(3) at the time each murder was committed, Gales also committed another murder; and

(4) the murder of Latara was especially heinous, atrocious, or cruel.

Following jury selection procedures that will be addressed in more detail below, a jury was impaneled and evidence adduced. The jury unanimously found each of the statutory aggravating circumstances set forth above to exist. The jury was discharged; a three-judge sentencing panel of the district court was convened to preside over a mitigation hearing and received evidence of mitigation and sentence excessiveness or disproportionality. The sentencing panel found no statutory mitigating circumstances to

be present in this case and considered two nonstatutory mitigating circumstances proffered by Gales: Gales' strong relationship with members of his family and his ability to adapt to life in prison. However, the panel concluded that the nonstatutory mitigating circumstances were not of sufficient weight to approach or exceed the weight which the panel gave to the aggravating circumstances applicable to each murder, and concluded that the sentence of death should be imposed on Gales for each of the murders of which he had been convicted. The panel concluded that the imposition of a sentence of death was not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Consequently, the panel imposed two sentences of death on Gales.

Other factual details will be set forth below as relevant to our discussion of the issues presented in this appeal.

## III. ANALYSIS

Gales assigns that the court erred in imposing the death penalty for a number of reasons. Because Gales assigns a great many errors, we have for the sake of clarity consolidated, restated, and reordered Gales' assignments of error. Those assignments of error, and the appropriate standards of review, are set forth below in the individual sections of our analysis.

### 1. APPLICABILITY OF L.B. 1

#### (a) Assignments of Error

(1) L.B. 1 is an ex post facto law that cannot be applied retroactively to Gales' case;

(2) the Nebraska death penalty statutes in effect at the time of the murders were unconstitutional and void pursuant to the principle announced in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); and

(3) L.B. 1 is ineffective because it does not require aggravating circumstances to be alleged in the information.

#### (b) Standard of Review

The constitutionality of a statute is a question of law, regarding which the Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Diaz*, 266 Neb. 966, 670 N.W.2d 794 (2003).

### (c) Analysis

Gales assigns several errors with respect to the applicability of L.B. 1 to his resentencing. We discussed the general provisions of L.B. 1 in our decision in *Gales I.*

> Generally, L.B. 1 makes two significant changes in Nebraska's capital sentencing procedure. First, it provides for an "aggravation hearing" following a determination of guilt in a first degree murder case, at which a jury determines whether aggravating circumstances alleged by the State exist, unless such determination by a jury is waived by the defendant. L.B. 1, § 11. Second, it removes the option of sentencing by the trial judge and requires sentencing by a panel of three judges. *Id.,* § 12. L.B. 1 does not change the statutory definitions of aggravating and mitigating circumstances or the manner in which they are to be balanced. *Id.,* §§ 14 and 15.

*Gales I,* 265 Neb. at 627, 658 N.W.2d at 626.

Gales challenges the applicability of L.B. 1's sentencing procedures to his resentencing. Gales also challenges several specific provisions of L.B. 1. However, we have previously considered and rejected several of these arguments, most pertinently in our decision in *Gales I.* Consequently, it is relevant that matters previously addressed in an appellate court are not reconsidered unless the petitioner presents materially and substantially different facts. *Thomas v. State,* 268 Neb. 594, 685 N.W.2d 66 (2004). Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *Id.* The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *State v. White,* 257 Neb. 943, 601 N.W.2d 731 (1999). Furthermore, it is well established that the doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so. *State v. Reeves,* 258 Neb. 511, 604 N.W.2d 151 (2000).

These principles, compelling adherence to our prior resolution of issues, will prove dispositive of several of Gales' claims.

### (i) Ex Post Facto Law

Gales first argues that L.B. 1 was an impermissible ex post facto law, because, according to Gales, L.B. 1 transformed the statutory aggravating circumstances from sentencing factors into elements of "capital felony murder." Brief for appellant at 9. Both U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, provide that no ex post facto law may be passed. *Gales I.* A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts. *Id.* This ex post facto analysis applies when a statutory amendment changes the punishment of a crime. *Id.*

In *Gales I*, we considered and rejected Gales' ex post facto argument. We held that L.B. 1's provisions for jury determination of aggravating circumstances affected a procedural change in the law which applied to all proceedings which occurred after the effective date of the amendment. See *id.* We specifically concluded that application of those provisions would not violate ex post facto principles. See *id.* Accord *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *cert. denied* 543 U.S. 1128, 125 S. Ct. 1088, 160 L. Ed. 2d 1081 (2005). This holding represents the law of the case and precludes Gales' claim. Gales presents no argument persuading us to reconsider our prior determination on this issue.

Thus, we reject Gales' first assignment of error. Furthermore, it appears from our examination of the briefs that Gales' second assignment of error, although somewhat confusing, is based in the same underlying legal theory as his first assignment of error. We also reject Gales' second assignment of error.

### (ii) Allegation of Aggravating Circumstances

In his next assignment of error, Gales claims that L.B. 1 is "ineffective" because it does not require aggravating circumstances to be alleged in the information, without which the defendant has not been charged with a crime. We first note that although Gales' situation is somewhat different because L.B. 1 was enacted

during the pendency of his first direct appeal, Gales' characterization of Nebraska law is incorrect.

> Any information charging a violation of section 28-303 [murder in the first degree] and in which the death penalty is sought shall contain a notice of aggravation which alleges one or more aggravating circumstances, as such aggravating circumstances are provided in section 29-2523. The notice of aggravation shall be filed as provided in section 29-1602. It shall constitute sufficient notice to describe the alleged aggravating circumstances in the language provided in section 29-2523.

Neb. Rev. Stat. § 29-1603(2)(a) (Cum. Supp. 2004).

Second, to the extent that Gales' argument can be construed to complain about the fact that aggravating circumstances were not alleged in his charging information, we addressed that complaint in *Gales I*. We noted that the filing of a notice of aggravation was a new procedure established by L.B. 1 and concluded that because the pretrial and trial "steps" of Gales' litigation were completed and became final at a time when the law did not require the State to file a notice of aggravation in order to seek the death penalty, this new procedural requirement was not applicable to Gales. *Gales I*. This determination is the law of the case, and we decline to reconsider it.

Finally, we note that Gales was aware, from our opinion in *Gales I*, of precisely which aggravating circumstances would be at issue in the penalty phase proceedings of his resentencing and that the State filed a notice of aggravating circumstances prior to resentencing even though it was not required, under our opinion in *Gales I*, to do so. Thus, to the extent Gales is arguing that he was not afforded the notice necessary to allow him to prepare a defense, we find such argument to be without merit. See *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir. 1998) (rejecting argument that defendant had insufficient notice of aggravating factors).

### 2. CONSTITUTIONAL CHALLENGES TO CAPITAL SENTENCING PROCEDURES

#### (a) Assignment of Error

Nebraska's capital sentencing provisions, Neb. Rev. Stat. § 29-2519 et seq. (Reissue 1995 & Cum. Supp. 2004), are overly

broad and violate Gales' rights to due process and equal protection in that those provisions:

(1) set forth no criteria for the selection of the three-judge panel;

(2) set forth no procedures to be followed by the three-judge panel;

(3) do not permit the defendant to select and voir dire the sentencing panel;

(4) do not require jury input into sentencing;

(5) do not permit the jury to determine mitigating factors, as required by *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002);

(6) limit the mitigating circumstances which can be presented by a defendant because there are no standards regarding the mechanism and burdens of proof for mitigating circumstances;

(7) provide no notice to the defendant of which cases the sentencing panel will consider in its proportionality review; and

(8) do not regulate prosecutorial discretion.

### (b) Standard of Review

The constitutionality of a statute is a question of law, regarding which the Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Diaz*, 266 Neb. 966, 670 N.W.2d 794 (2003).

### (c) Analysis

Gales advances several arguments challenging the constitutionality of the Nebraska capital sentencing provisions. These arguments are variously, if not consistently, based on the 8th or 14th Amendment to the U.S. Constitution.

### *(i) Three-Judge Panel*

■ Gales argues that the Nebraska capital sentencing procedures are unconstitutional because they

> do not specifically provide for the method for the Chief Judge [sic] of the Nebraska Supreme Court to select panel members; and panel members do not appear to be selected at random or by any visible or any articulated objective constitutional method, and the selection of panel members appears to be arbitrary and capricious.

Brief for appellant at 16. This argument is without merit. Section 29-2521 specifically provides that the panel of judges, including the judge who presided at the trial of guilt, shall be "named at random by the Chief Justice of the Supreme Court." We have previously stated that the statutory sentencing procedure provides appropriate standards for impaneling a three-judge panel. See, *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989). Furthermore, in the absence of evidence to the contrary, it may be presumed that public officers faithfully performed their official duties and that absent evidence showing misconduct or disregard of law, the regularity of official acts is also presumed. *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001). There was no evidence presented that the Chief Justice did anything other than randomly choose the names of the sentencing panel as required by § 29-2521.

Given the statutory requirement of a random selection of the panel, our holdings in *Bjorklund* and *Ryan*, the presumption of regularity which attaches to official acts, and the absence of any evidence which would serve to rebut that presumption, we find no merit to Gales' argument.

Gales further argues that his right to equal protection is violated because there are no statutory provisions or criteria governing the procedures to be followed by a three-judge panel. Gales does not explain precisely how his right to equal protection of the laws is implicated by this fact. However, we rejected an argument similar to Gales' in *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). In that case, the defendant claimed that the lack of procedures for a three-judge panel violated Neb. Const. art. V, § 19, which requires uniformity in the force and effect of the proceedings, judgments, and decrees of the courts. We rejected this argument, stating that the statutes were not rendered unconstitutional because the district courts were given some discretion in sentencing proceedings. "Discretion indicates that proceedings will be inconsistent, but does not indicate that proceedings will lack uniformity in a constitutional sense." *Lotter*, 255 Neb. at 512, 586 N.W.2d at 630. To the extent that such proceedings lack uniformity due to the exercise of the district courts' discretion, the appropriate challenge is whether the discretion used by the district court in the case at issue amounted to abuse. *Id.*

Although a different constitutional provision is invoked in the instant case, we see no meaningful basis to distinguish our analysis from that in *Lotter*, particularly when Gales' argument in this case consists of little more than a citation to the Equal Protection Clause. Therefore, we find no merit in Gales' argument.

Gales also argues that the statutes are unconstitutional because they do not afford him the right to select and voir dire the members of the sentencing panel. Gales offers no authority for the rather remarkable proposition that a defendant has a constitutional right to select his or her sentencing judge, nor are we aware of any; in fact, the weight of the authority is to the contrary. Gales is essentially claiming a right to engage in "judge-shopping," which has been characterized as "'conduct which abuses the judicial process.'" See *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998), quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The random assignment system is intended to comport with due process, by preventing any person from choosing the judge to whom an action is to be assigned. Cf. *Cuzzort v. State*, 271 Ga. 464, 519 S.E.2d 687 (1999).

In short, the law clearly provides that selection of the members of the three-judge sentencing panel will be random, and there is no basis in this case to overcome the presumption that the selection of Gales' panel comported with this requirement. Gales' constitutional rights are not violated by a random assignment of judges. We reject Gales' arguments with respect to the composition and procedures of the sentencing panel.

### (ii) Jury Input Into Sentencing

Gales next argues that the capital sentencing procedures are unconstitutional because they do not provide for any jury input into the issue of what sentence should be imposed upon a defendant convicted of a capital crime. He also contends that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), requires a jury to determine mitigating circumstances.

In his appeal in *Gales I*, however, Gales argued that because *Ring* conferred a right to a jury determination of whether aggravating circumstances exist, we should also determine, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed.

2d 435 (2000), that a jury must also conduct the weighing function of capital sentencing. We rejected that argument, stating that we understand *Ring* as recognizing a Sixth Amendment right to a jury determination of the existence of aggravating circumstances which determine "death eligibility," because in the absence of at least one such circumstance, the death penalty cannot be imposed. It is the determination of "death eligibility" which exposes the defendant to greater punishment, and such exposure triggers the Sixth Amendment right to jury determination as delineated in *Apprendi* and *Ring*. In contrast, the determination of mitigating circumstances, the balancing of aggravating circumstances against mitigating circumstances, and proportionality review are part of the "selection decision" in capital sentencing, which, under the current and prior statutes, occurs only after eligibility has been determined. See § 29-2522; L.B. 1, § 14. These determinations cannot increase the potential punishment to which a defendant is exposed as a consequence of the eligibility determination. Accordingly, we do not read either *Apprendi* or *Ring* to require that the determination of mitigating circumstances, the balancing function, or proportionality review be undertaken by a jury.

*Gales I*, 265 Neb. at 628-29, 658 N.W.2d at 626-27. Cf. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (Sixth Amendment prohibits judicial factfinding that enables judge to increase sentences, but not judicial factfinding to reduce sentences).

Gales presents no basis for us to reconsider our decision in *Gales I*, and the U.S. Supreme Court's rearticulation in *Booker* of the *Apprendi/Ring* principles we discussed in *Gales I* only reinforces our original conclusion. Consequently, we reject Gales' argument.

### *(iii) Limitation of Evidence of Mitigating Circumstances*

■■■■ Gales contends that the capital sentencing statutes are unconstitutional "in that they limit the mitigating circumstances which can be presented by a defendant, because there are no standards regarding the mechanism and burdens of proof for mitigating circumstance[s]." Brief for appellant at 17. To meet

constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating circumstances. *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). But there is no perfect procedure for deciding in which cases governmental authority should be used to impose death. *Id.* We conclude that appropriate standards for the submission and consideration of mitigating circumstances have been established by statute and this court's case law.

Section 29-2521(3) provides that

[w]hen a jury renders a verdict finding the existence of one or more aggravating circumstances as provided in section 29-2520, the panel of judges shall, as soon as practicable after receipt of the written report resulting from the presentence investigation ordered as provided in section 29-2261, hold a hearing to receive evidence of mitigation and sentence excessiveness or disproportionality. *Evidence may be presented as to any matter that the presiding judge deems relevant to (a) mitigation, including, but not limited to, the mitigating circumstances set forth in section 29-2523,* and (b) sentence excessiveness or disproportionality as provided in subdivision (3) of section 29-2522. Any such evidence which the presiding judge deems to have probative value may be received. The state and the defendant and his or her counsel shall be permitted to present argument for or against sentence of death. The presiding judge shall set forth the general order of procedure at the outset of the sentencing determination proceeding. After the presentation and receipt of evidence and argument, the panel shall determine an appropriate sentence as provided in section 29-2522.

(Emphasis supplied.) Furthermore, this court has stated that while there is no burden of proof with respect to mitigating circumstances, and the defendant may present evidence which is probative of the existence of a statutory or nonstatutory mitigating circumstance, the risk of nonproduction and nonpersuasion is on the defendant. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). Nebraska's death penalty sentencing procedures allow the defendant a constitutionally sufficient opportunity to adduce evidence relevant to mitigation.

## (iv) Notice of Cases Considered in
## Proportionality Review

█ Gales argues that the death penalty sentencing statutes are unconstitutional because there is no notice requirement providing the defendant with information as to which cases the sentencing panel will review and analyze as part of its proportionality review. While the Eighth Amendment does not require a court to engage in a proportionality review, see *Pulley v. Harris*, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984), where a state creates a right to proportionality review, the Due Process Clause entitles the defendant to procedures to ensure that the right is not arbitrarily denied. See *Foster v. Delo*, 39 F.3d 873 (8th Cir. 1994).

█ But Gales does not argue—nor would the record support an argument—that he did not have sufficient notice of what the sentencing panel considered in this case. Standing to challenge the constitutionality of a statute under the federal or state Constitution depends upon whether one is, or is about to be, adversely affected by the language in question; to establish standing, the contestant must show that as a consequence of the alleged unconstitutionality, the contestant is, or is about to be, deprived of a protected right. *State v. Cushman*, 256 Neb. 335, 589 N.W.2d 533 (1999). Here, the sentencing order indicates that the sentencing panel's proportionality review was based upon this court's published opinions in capital cases, see *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), and exhibits 150 through 155, which were introduced by Gales at his first sentencing. That the sentencing panel would consider other cases in which the death penalty had been imposed was clear from our opinion in *Bjorklund*; to the extent that Gales believed other evidence was relevant to the proportionality of his sentences, he had the opportunity to present that evidence.

█ In the context of criminal proceedings, due process generally requires the defendant be given notice and an adequate opportunity to defend himself or herself. *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001). The record shows that in this case, Gales received notice and an opportunity to be heard on the proportionality of his sentences. Consequently, the record provides

Gales with no basis to challenge the constitutional adequacy of the statutory scheme.

*(v) Regulation of Prosecutorial Discretion*

Gales argues that the death penalty sentencing procedures are unconstitutional because they do not regulate the exercise of prosecutorial discretion. But the U.S. Supreme Court has rejected the argument that the U.S. Constitution requires limitations to be placed on prosecutorial discretion in the context of capital sentencing. See *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). See, also, *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *disapproved on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990). In our criminal justice system, the State retains broad discretion as to whom to prosecute and what charge to file. See *Wayte v. United States*, 470 U.S. 598, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985). Instead, to the extent that a prosecutor's discretion is subject to constitutional constraints, it is in the fact that a decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification. *United States v. Armstrong*, 517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). In that regard, Gales claims:

> In support thereof, there have been a number of murder cases in Nebraska with evidence of similar, and in some cases more "aggravating circumstances" than others which have, by way of plea agreements, resulted in convictions other than first degree murder and therefore no sentence of death. Further, there have been numerous first degree murder convictions in Nebraska in which, by plea agreement or otherwise, the prosecution has refrained (for a variety of reasons, on information and belief including but not limited to projected costs for a death penalty case) from seeking the death penalty or refrained from offering any evidence as to aggravating circumstances at the sentencing phase of a defendant's trial.

Brief for appellant at 17.

The purpose of setting forth Gales' appellate argument, in its entirety, is to illustrate the degree to which it depends on assertions of fact that are unsupported by evidence. Gales has simply

failed to present any record that would justify a conclusion that prosecutorial discretion has been abused. Gales' allegations are not only unsubstantiated, but even if supported by evidence, would not establish that the State has exercised prosecutorial discretion for reasons forbidden by the Constitution. See *Armstrong, supra.* The presumption of regularity supports prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties. *Id.* In order to dispel this presumption, a criminal defendant must present clear evidence to the contrary. *Id.* Such evidence is completely lacking here; thus, Gales' constitutional claim fails. See *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986).

### 3. UNCONSTITUTIONAL VAGUENESS

#### (a) Assignments of Error

(1) The Nebraska death penalty statutes are facially unconstitutional because they are vague;

(2) the aggravating circumstance that the defendant was previously convicted of "a crime involving the use or threat of violence to the person" is unconstitutionally vague;

(3) the aggravating circumstance that "[t]he murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of such crime" is unconstitutionally vague;

(4) the aggravating circumstance that the murder was "especially heinous, atrocious, [or] cruel" is unconstitutionally vague; and

(5) the aggravating circumstance that "[a]t the time the murder was committed, the offender also committed another murder" is unconstitutionally vague.

#### (b) Standard of Review

The constitutionality of a statute is a question of law, regarding which the Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Diaz*, 266 Neb. 966, 670 N.W.2d 794 (2003).

#### (c) Analysis

Gales' assignments of error allege that the Nebraska death penalty statutes are unconstitutionally vague and that each of the

aggravating circumstances found to have been proved in this case is unconstitutionally vague. However, Gales' appellate brief offers little in the way of argument for any of these claims. For instance, in support of the first assignment of error listed in this section, Gales' argument consists of a list of the constitutional provisions that § 29-2519 et seq. allegedly violates. Gales does not offer any propositions of law, or articulate any constitutional standards, to substantiate these claims, nor, with the sole exception of a reference to *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), does Gales cite any relevant legal authority.

We assume, given this lack of specificity, that Gales' assignment of error is simply intended to be a restatement of the constitutional arguments that Gales argued more specifically elsewhere in his brief. Nonetheless, to the extent that Gales' assignment of error is intended to raise any issues beyond the more specific constitutional claims we discuss elsewhere in this opinion, we decline to address them, as they have not been properly raised. Gales presents us with no basis to reconsider our well-established holding that Nebraska's death penalty statutes are neither vague nor overbroad. See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).

Similarly, with respect to the alleged unconstitutional vagueness of each of the aggravating circumstances found to exist in this case, Gales' argument is limited to a nearly identical list of the constitutional provisions allegedly violated. We first note that while Gales lists a number of constitutional provisions, his assignments of error simply claim that the aggravating circumstances are "unconstitutionally vague," which in the context of capital sentencing, implicates the Eighth Amendment's requirement that they "furnish principled guidance for the choice between death and a lesser penalty." See *Richmond v. Lewis*, 506 U.S. 40, 46, 113 S. Ct. 528, 121 L. Ed. 2d 411 (1992).

Second, we have previously rejected constitutional challenges to each of the aggravating circumstances Gales challenges in this appeal. As relevant, the aggravating circumstances at issue in this case are as follows:

> (a) The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person . . . ;

(b) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of such crime;

. . . .

(d) The murder was especially heinous, atrocious, [or] cruel . . . ;

(e) At the time the murder was committed, the offender also committed another murder . . . .

§ 29-2523(1). Each of these aggravating factors has been held constitutional in response to an argument of unconstitutional vagueness. See, *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000) (effort to conceal identity of perpetrator; especially heinous, atrocious, or cruel); *State v. Williams*, 217 Neb. 539, 352 N.W.2d 538 (1984) (previous conviction of crime involving use or threat of violence to person), citing *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977); *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977) (another murder), *disapproved on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990). In the absence of any particular argument explaining the alleged vagueness of each of these terms, we decline to reconsider our established holdings rejecting Gales' arguments.

We also note, with respect to aggravating circumstance (1)(b), that Gales' argument is directed at the alleged vagueness of the phrase "apparent effort" to conceal the commission of a crime or conceal the identity of the perpetrator. Compare § 29-2523 (Reissue 1995). Gales complains that there is no clear definition of what constitutes an "apparent effort." However, the current wording of aggravating circumstance (1)(b), quoted above, does not contain the word "apparent." See § 29-2523 (Cum. Supp. 2004). The word "apparent" was removed from the statute effective July 15, 1998, well before the murders of Latara and Tramar. See, 1998 Neb. Laws, L.B. 422; *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).

The alleged vagueness of aggravating circumstance (1)(d) will be addressed below in more depth, as it relates to our analysis of Gales' challenge to the jury instruction based on that aggravating circumstance. At this point, however, it suffices to state that we find each of Gales' assignments of error alleging the vagueness of Nebraska's capital sentencing statutes to be without merit.

## 4. CRUEL AND UNUSUAL PUNISHMENT
### (a) Assignment of Error

The Nebraska death penalty statutes subject a defendant to cruel and unusual punishment.

### (b) Standard of Review

The constitutionality of a statute is a question of law, regarding which the Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Diaz,* 266 Neb. 966, 670 N.W.2d 794 (2003).

### (c) Analysis

Gales contends that inflicting the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment. Gales first claims that the death penalty "is in fact administered and applied arbitrarily, capriciously and whimsically in the State of Nebraska." Brief for appellant at 27. Again, there is little in the way of evidence or argument to substantiate this claim, and to the extent that this claim is not subsumed in his other arguments, we decline to consider it.

Gales also makes several contentions that, characterized generally, attack the death penalty as being unsound public policy. For instance, Gales contends that the death penalty is irrational, induces violence, and does not deter crime. But it is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state. *State v. Warriner,* 267 Neb. 424, 675 N.W.2d 112 (2004). Our responsibility, in this context, is to ensure that the Legislature has, in promulgating public policy, acted within constitutional boundaries. It is well established that imposition of the death penalty is not, per se, cruel and unusual punishment. *Proffitt v. Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976). Cf. *Jones v. United States,* 527 U.S. 373, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999). See, also, *State v. Hurbenca,* 266 Neb. 853, 669 N.W.2d 668 (2003) (Nebraska Constitution does not require more than Eighth Amendment to U.S. Constitution with reference to cruel and unusual punishment), *cert. denied* 541 U.S. 910, 124 S. Ct. 1618, 158 L. Ed. 2d 257 (2004).

Gales also argues that death by electrocution is cruel and unusual punishment. As in *State v. Mata,* 266 Neb. 668, 668 N.W.2d

448 (2003), *cert. denied* 543 U.S. 1128, 125 S. Ct. 1088, 160 L. Ed. 2d 1081 (2005), we note recent events at the U.S. Supreme Court that cast substantial doubt upon whether that Court will continue to regard electrocution as consistent with the Eighth Amendment. See *id.*, citing *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002); *Bryan v. Moore*, 528 U.S. 960, 120 S. Ct. 394, 145 L. Ed. 2d 306 (1999) (granting certiorari on question), *cert. dismissed as improvidently granted* 528 U.S. 1133, 120 S. Ct. 1003, 145 L. Ed. 2d 927 (2000) (dismissing certiorari due to legislative enactment of lethal injection); *Campbell v. Wood*, 511 U.S. 1119, 114 S. Ct. 2125, 128 L. Ed. 2d 682 (1994) (Blackmun, J., dissenting from denial of certiorari; Stevens and Ginsburg, JJ., voting to grant stay of execution); and *Poyner v. Murray*, 508 U.S. 931, 113 S. Ct. 2397, 124 L. Ed. 2d 299 (1993) (Souter, J., joined by Blackmun and Stevens, JJ., respecting denial of petition for writ of certiorari). See, also, *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

In the present case, however, Gales has presented no evidence that would warrant reconsideration of our prior decisions holding that death by electrocution as administered in this state is not cruel and unusual punishment. See *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003), *cert. denied* 542 U.S. 939, 124 S. Ct. 2904, 159 L. Ed. 2d 815 (2004), citing *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). In the absence of such a record, we continue to adhere to those holdings. We find Gales' assignment of error to be without merit.

### 5. RETROACTIVITY OF *RING V. ARIZONA*

#### (a) Assignment of Error

Gales' death sentence should be vacated because of *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir. 2003), *reversed sub nom. Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

#### (b) Analysis

In *Summerlin v. Stewart*, the Ninth Circuit held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), applied retroactively to final judgments that were the subject of collateral review on postconviction appeal from death sentences. But that holding was reversed by the U.S. Supreme

Court in *Schriro v. Summerlin, supra*, which held that *Ring* did not apply retroactively. See, also, *Lotter, supra*.

That having been said, we find Gales' argument is somewhat confusing, given that *Ring* clearly applies to his case, as we determined in *Gales I*, and that his case is not on collateral review. Gales appears to be arguing that if *Ring* applied retroactively, defendants who collaterally attacked their death sentences would have those sentences commuted; thus, argues Gales, it would be unfair to sentence him to death when others, whose convictions had become final, were sentenced to life imprisonment.

Gales' argument fails for several reasons. First, his assumption that retroactive application of *Ring* would result in the commutation of sentences, as opposed to resentencing proceedings, is without support. Second, taken to its logical extreme, Gales' argument would amount to a revocation of the death penalty, as there is no principled basis to distinguish between Gales and any other defendant charged after *Ring* who could be sentenced to death while others' death sentences were commuted. There is simply no support for the contention that the decision to afford an individual defendant mercy violates the U.S. Constitution. See *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). In any event, however, Gales' argument fails at its most basic premise. The U.S. Supreme Court's decision in *Schriro v. Summerlin, supra*, forecloses Gales' claim.

## 6. MOTION FOR CONTINUANCE

### (a) Assignment of Error

The district court erred in denying Gales' request for a continuance.

### (b) Standard of Review

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Fields*, 268 Neb. 850, 688 N.W.2d 878 (2004).

### (c) Analysis

On October 1, 2003, Gales filed a motion to continue the aggravation hearing. The motion was heard on October 16, at which time, the district court overruled the motion. The court explained its reasoning at length.

First of all, the record reveals that defense counsel was appointed for this sentencing determination hearing — or this penalty phase of the case on August the 22nd of 2003, approximately two months prior to the actual commencement of the sentencing hearing. And on August 25th of 2003, the notice of the penalty phase hearing was sent to then the Douglas County Attorney's Office, as well as to Defendant's counsel.

I would say that I know that [defense counsel] has been working very hard to get prepared on this case. For example, I know that you have reviewed the presentence investigation report several times. You have been up to my chambers to the court reporter's office to examine trial exhibits and various bills of exceptions from the trial. . . . The bill of exceptions is and it has been available, but, frankly, much of the trial evidence isn't relevant to the penalty phase hearing.

The aggravators that are being alleged to exist are — and these are the four — and if you recall from the supreme court opinion, it's very limited, and even some of the aggravators have been subdivided down to just the specific prong of the aggravator that I had originally found at the original sentencing hearing, so it's not a wide-open situation. . . .

. . . .

In addition to the motion to continue and as far as counsel's preparation is concerned, frankly, it's quite impressive. I note that you filed ten motions in addition to the motion to continue . . . .

. . . [I]t's apparent to me that you are more than adequately prepared and ready to enter into this sentencing phase.

Finally, the crimes [Gales] has been convicted of occurred in November of 2000. He was convicted in August of 2001 and sentenced originally in November of 2001 and it is now almost November of 2003 and he is still awaiting sentencing for crimes he was convicted of over two years

ago. I don't believe it's fair to [Gales], the State of Nebraska, or to the victims' family to delay this any longer, and so I am going to overrule your motion . . . .

Given the district court's well-reasoned basis for denying Gales' motion for a continuance, we find no abuse of the court's discretion. Gales argues that to be prepared for the aggravation hearing, his counsel needed more time to review all the available information. Yet in his appellate brief, Gales does not identify any specific way in which he was prejudiced by the court's denial of his motion. Presumably, before preparing Gales' appellate brief, Gales' counsel would have had sufficient time to examine the evidence thoroughly and locate any critical information that was missed prior to the aggravation hearing. The fact that no prejudice has been explained lends support to our determination that the district court did not abuse its discretion in assessing counsel's preparedness for the aggravation hearing.

## 7. JURY SEQUESTRATION

### (a) Assignment of Error

The jury was not sequestered from the time it was impaneled until the case was submitted.

### (b) Standard of Review

■■■ Whether a jury is to be kept together before submission of the cause in a criminal trial is left to the discretion of the trial court. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000).

### (c) Analysis

Prior to voir dire, Gales filed a motion to sequester the jurors from the time the jury was impaneled until a decision was reached. The district court denied the motion in part, and ordered that the jurors be sequestered only after the case was submitted to them. Gales claims this was error.

■■■ But to warrant reversal, denial of a motion to sequester the jury before submission of the cause must be shown to have prejudiced the defendant. *Bjorklund, supra*; *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). Here, no such prejudice is shown. The jurors in this case were, immediately after they were sworn, admonished not to discuss the case among themselves or anyone else when court was not in session, and not to read, view,

or listen to any news reports regarding the case. The court went well beyond the admonition set forth in NJI2d Crim. 1.0(7), and it explained to the jury at length the reasons for the admonition and the possible consequences if the admonition was not respected. At each recess prior to submission of the case to the jury, the jurors were reminded not to discuss the case with anyone or view any news reports about the case.

Gales presents no evidence rebutting the presumption that the jurors followed the instructions they were given. See *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003). See, also, *Bjorklund, supra*. In addition, the sole basis on which Gales argues he was prejudiced was that the jury might have learned that in his previous sentencing, the judge sentenced him to death. We will deal with this issue in the context of Gales' next two assignments of error, but at this point, it suffices to say that Gales' argument does not establish he was prejudiced by the district court's refusal to sequester the jury prior to submission of the case.

## 8. VOIR DIRE AND MOTION TO QUASH PENALTY PHASE HEARING

### (a) Assignments of Error

(1) The members of the venire were not individually questioned on their knowledge of Gales' previous sentence and the issue of rape, and

(2) the aggravation hearing was fundamentally unfair because the jurors "probably" knew that Gales had previously been sentenced to death.

### (b) Standard of Review

The extent to which parties may examine jurors as to their qualifications rests in the discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and where it appears that harmful prejudice has been caused thereby. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

### (c) Analysis

#### (i) Individual Questioning

Prior to jury selection, Gales filed a motion to individually question the jurors during jury selection. Specifically, at the hearing on the motion, Gales sought to individually question the

members of the venire with respect to Gales' previous sentencing and the issue of rape. The court overruled the motion, explaining:

> I am going to overrule the motion, but insofar as potential jurors' opinions or reservations about the death penalty that would prevent or substantially impair their ability to act as a juror or any personal knowledge, that — and this would take into account your concern about whether or not they had heard about a prior sentence being given to . . . Gales — that the issue of a potential juror who has either formed or expressed an opinion as to what punishment [Gales] should receive, then those potential jurors would be questioned individually and out of the presence of the other jurors.
>
> And the way I intend to do that is if it's not covered by counsel, I may well just take over that part of the jury selection process myself, get it down to the point where we're asking the jurors just if they have an opinion one way or another to raise their hand and then all of those people will be questioned individually.

The court specifically instructed the parties not to discuss Gales' prior death sentences with the venire. Later, during voir dire, Gales' counsel again raised the issue of prehearing publicity with the court. The court responded by noting that it had asked the potential jurors about their knowledge of the case and that Gales could follow that up in voir dire if he chose. When Gales' counsel asked specifically about examining the potential jurors to see if they knew anything about Gales' previous sentences, the court stated:

> Well, if they do, then I suppose if you ask them about the case, you better be very, very careful that they don't blurt something out in front of the rest of the jurors that might potentially taint them, but I think I indicated at our pretrial motion hearing the other day that should that happen, that, frankly, I think we put this responsibility in the hands of the jurors, and so while we try to treat them with kid gloves and we try to insulate them as much as possible from any outside influence, it is what it is. The case was sent back, and so the fact is it is as if . . . Gales were just convicted yesterday. He has no sentence. Regardless of what may have happened in the past, there simply is no sentence right now, and if I have

to, I will admonish them on that, but I don't think that we need to get to that point because I think they are mature enough that if you tell them these are the parameters and you are supposed to decide the case within these parameters and that's why — actually, I was going to tell them initially that he was convicted on August 27th of 2001 and I changed that to previously, because I don't think at this point it has anything to do with the case and I almost feel like we would be kind of stirring something up by getting into that, but I will leave that up to you. *If you feel that that's something you want to try to pursue with them, certainly feel free to do so, but just be careful that you don't ask a question that would elicit some type of answer about any previous sentence he might have had* because he simply does not have a sentence at this point. That's why we're here.

(Emphasis supplied.) Gales ultimately did not ask the potential jurors if they were aware of Gales' prior sentences.

 It is helpful, at the outset, to be specific about precisely what issue is presented here. The question decided by the district court was whether Gales would be permitted to sequester and *individually* question the members of the venire regarding Gales' prior sentences and the issue of rape. However, except where there is a showing that without sequestration a party's rights would be prejudiced, a party has no right to examine an individual juror out of the presence of all the other potential jurors. *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996). Gales has failed to explain why individual questioning was necessary or show how he was prejudiced by the district court's denial of his motion.

In *McHenry, supra*, the defendant, who was being retried, argued that the court should have permitted sequestration and individual questioning of jurors so that he could question each juror about pretrial publicity without exposing the other potential jurors to that publicity. However, we rejected that argument, stating that

we find that the circumstances of the voir dire do not demonstrate how [the defendant] was prejudiced. The prospective jurors were admonished by the court on numerous occasions concerning pretrial publicity and the irrelevance

of the fact that the case was a retrial. The panel was questioned several times as to whether any of the members thought that they could determine [the defendant's] guilt based solely on the evidence presented at trial. The judge specifically instructed the panel that if any panel member had further concerns, he or she should contact the bailiff so that the court, along with the parties, could individually hear and address the concerns. In each case, when a panel member stated that he or she could not put aside pretrial publicity, the member was dismissed for cause. [The defendant] has not shown how further indepth questioning of sequestered jurors would have revealed anything more than was ascertained during the jury selection. Therefore, [the defendant] has not established that his rights were prejudiced by the failure of the district court to sequester the panel to permit individual questioning.

*Id.* at 627, 550 N.W.2d at 374. See, also, *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990).

Similarly, in this case, the members of the venire were told that if there was any question asked that they did not want to answer publicly, they could do it privately in the judge's chambers. Seven of the potential jurors were questioned separately for various reasons, and each of the five of those potential jurors who indicated an inability to be fair and impartial in deciding the case was immediately excused for cause. The members of the venire were specifically asked, by the court, whether they recalled reading or hearing about the case, and none of the jurors indicated that their knowledge of the case, if any, would preclude them from being fair and impartial.

With respect to the issue of rape, the venire was specifically asked if anything about the allegation of sexual assault would cause any of the potential jurors to say that they could not be fair and impartial, and none of the potential jurors indicated any reservations. The potential jurors were repeatedly asked about their ability to be fair and impartial and to decide the case based solely on the evidence presented at the hearing. Gales had the opportunity to ask the members of the venire about their knowledge of the case and whether it would affect their ability to be fair and impartial. As in *State v. McHenry*, 250 Neb. 614, 550

N.W.2d 364 (1996), Gales has not established that his rights were prejudiced by the district court's denial of his motion to sequester and individually question the members of the venire. See, also, *Bradley, supra.* Thus, we find no abuse of discretion.

## (ii) Fairness of Aggravation Hearing

Gales also argues that because the jury "probably" knew about Gales' prior death sentences, the aggravation hearing was fundamentally unfair. The U.S. Supreme Court addressed a similar issue in *Romano v. Oklahoma*, 512 U.S. 1, 114 S. Ct. 2004, 129 L. Ed. 2d 1 (1994). In that case, the defendant had been charged with two separate murders: that of Roger Sarfaty, committed in 1985, and that of Lloyd Thompson in 1986. The defendant was first convicted and sentenced to death for the Thompson murder, and then tried for the Sarfaty murder in a separate proceeding. During the sentencing phase of the trial for the Sarfaty murder, the prosecution introduced a copy of the judgment and sentence for the Thompson murder, thus revealing to the jury that the defendant had already been sentenced to death.

The defendant was convicted and sentenced to death for the Sarfaty murder, and on direct appeal from that judgment, he argued that the trial court had erred in admitting evidence of the conviction and sentence for the Thompson murder. The Oklahoma Court of Criminal Appeals agreed that evidence of the Thompson judgment was irrelevant, but concluded the irrelevant evidence had not so infected the sentencing determination as to make the determination to impose the death penalty a violation of due process. See *Romano v. State*, 847 P.2d 368 (Okla. Crim. App. 1993), *affirmed, Romano v. Oklahoma, supra.*

The U.S. Supreme Court affirmed the decision of the Oklahoma court. *Romano v. Oklahoma, supra.* The Court stated:

> The relevant question in this case, therefore, is whether the admission of evidence regarding petitioner's prior death sentence so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process. . . . Under this standard of review, we agree with the Oklahoma Court of Criminal Appeals that the admission of this evidence did not deprive petitioner of a fair sentencing proceeding.

The evidence that petitioner received a death sentence for murdering Thompson was deemed irrelevant by the Oklahoma Court of Criminal Appeals. . . . However, if the jurors followed the trial court's instructions, which we presume they did . . . this evidence should have had little—if any—effect on their deliberations. Those instructions clearly and properly described the jurors' paramount role in determining petitioner's sentence, and they also explicitly limited the jurors' consideration of aggravating factors to the four which the State sought to prove. Regardless of the evidence as to petitioner's death sentence in the Thompson case, the jury had sufficient evidence to justify its conclusion that these four aggravating circumstances existed. . . . In short, the instructions did not offer the jurors any means by which to give effect to the evidence of petitioner's sentence in the Thompson murder, and the other relevant evidence presented by the State was sufficient to justify the imposition of the death sentence in this case.

(Citations omitted.) *Id.* at 12-13.

The instant case is distinguished by the fact that here, the jury was (according to Gales) aware of prior, vacated sentences of death for the same murders, rather than another death sentence arising from a different crime. However, the reasoning of the U.S. Supreme Court in *Romano v. Oklahoma*, 512 U.S. 1, 114 S. Ct. 2004, 129 L. Ed. 2d 1 (1994), is equally applicable to such a situation. See, *Anderson v. Calderon*, 232 F.3d 1053 (9th Cir. 2000); *Ruiz v. Norris*, 868 F. Supp. 1471 (E.D. Ark. 1994), *affirmed* 71 F.3d 1404 (8th Cir. 1995); *Jones v. State*, 332 S.C. 329, 504 S.E.2d 822 (1998); *People v. Ramos*, 15 Cal. 4th 1133, 938 P.2d 950, 64 Cal. Rptr. 2d 892 (1997).

As in *Romano v. Oklahoma, supra*, the jury instructions in this case (as will be analyzed below) accurately stated the jurors' role in determining Gales' sentences, set forth the correct burden of proof, and limited the jurors' deliberations to the four aggravating factors the State sought to prove. And, as in *Romano v. Oklahoma*, 512 U.S. at 13, these instructions "did not offer the jurors any means by which to give effect" to any knowledge of Gales' prior sentences.

In other words, even if some of the jurors were aware that Gales had previously been sentenced to death, there is no evidence to overcome the presumption that they faithfully followed the instructions they were given. See *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003). In fact, this case presents stronger facts than *Romano v. Oklahoma* in some respects. In this case, the district court acted correctly in seeking to keep irrelevant information about Gales' prior sentences from being revealed to potential jurors who were not already aware of it. Furthermore, the jurors in this case, if they were aware of Gales' prior death sentences at all, would have been aware of Gales' prior sentences *before* jury selection, yet they still indicated during voir dire that they could be fair and impartial. See *Stafford v. Saffle*, 34 F.3d 1557 (10th Cir. 1994). As noted above, Gales has not presented evidence to overcome our reliance on these assurances. See *id.*

In sum, Gales has not demonstrated that he was prejudiced by the district court's refusal to permit sequestration and individual questioning of the potential jurors on the issues of rape and Gales' prior sentences. This conclusion is reinforced by our determination that the jurors' awareness, if any, of Gales' prior death sentences did not render the sentencing proceeding fundamentally unfair, pursuant to the reasoning articulated in *Romano v. Oklahoma, supra.* Gales' sole argument for how he was prejudiced by the district court's refusal to sequester the potential jurors is based on the alleged prejudice from their knowledge of his prior sentences. The fact that any awareness of his prior sentences was itself not unduly prejudicial provides another basis for rejecting his argument regarding voir dire.

### 9. Evidence of Prior Convictions

#### (a) Assignment of Error

Evidence of Gales' prior convictions from Florida was not properly authenticated.

#### (b) Standard of Review

A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *State v. Tolliver*, 268 Neb. 920, 689 N.W.2d 567 (2004).

### (c) Analysis

As previously noted, § 29-2523(1)(a) provides that it is an aggravating circumstance, for capital sentencing purposes, if "[t]he offender was previously convicted of another murder or a crime involving the use or threat of violence to the person . . . ." In this case, the State sought to prove that aggravating circumstance by introducing evidence of Gales' Florida convictions, from 1987, for armed robbery and armed sexual battery. See Fla. Stat. Ann. §§ 812.13 (West 2000) (robbery) and 794.011 (West Cum. Supp. 2005) (sexual battery). Gales contends that the evidence of his Florida convictions, contained in exhibit 229, was not properly authenticated and should not have been admitted into evidence.

Gales relies upon *State v. Miller*, 11 Neb. App. 404, 651 N.W.2d 594 (2002), in which the Nebraska Court of Appeals determined that an Iowa conviction for driving under the influence of alcohol (DUI) was admissible for sentence enhancement purposes in a Nebraska DUI prosecution, because the first page of the exhibit containing evidence of the Iowa conviction bore the seal of the court and the signatures of the judge and the clerk of the court. Gales argues that the Florida convictions in this case were not properly authenticated because "[t]he prior used in this case was not signed by a judge . . . ." Brief for appellant at 34. But our review of exhibit 229 reveals that it satisfies the Nebraska evidentiary requirements applied in *Miller, supra.*

Neb. Evid. R. 901 provides, generally, that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Neb. Evid. R. 902 further provides that certain documents are self-authenticating; that is, no extrinsic evidence of authenticity as a condition precedent to admissibility is required. The *Miller* court relied upon *Dugan v. Jensen*, 229 Neb. 672, 673-74, 428 N.W.2d 504, 505 (1988), in which we explained that rule 902

> does not require authentication of a document bearing a seal and a signature purporting to be an attestation, a document purporting to bear the signature in his official capacity of an officer who has no seal if a public officer having a seal certifies under seal that the previous officer signing has

the official capacity to sign, or a copy of an official record certified as correct by the custodian by certificate complying with either of the previous two subdivisions.

We further explained, in *State v. Linn*, 248 Neb. 809, 539 N.W.2d 435 (1995), that in order to establish evidence's sufficient probative force to prove an earlier conviction for the purpose of sentence enhancement, the evidence must, with some trustworthiness, reflect a court's act of rendering judgment. In that case, we held one record of a prior DUI conviction to be properly authenticated when it contained a journal entry signed by the judge, was stamped with the court's seal, and was certified by the court clerk as a true copy of the original document on file with the court. In contrast, we found the record of a second DUI conviction to be inadequate where it contained no journal entry signed by the judge and, thus, did not reflect the judicial act of rendering judgment. See *id*. See, also, *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004); *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987).

Exhibit 229 amply satisfies the foregoing rules. It consists of the record of a case brought against "Arthur Lee Gales, Jr.," in the circuit court for Alachua County, Florida. It appears to be what, in Nebraska practice, would be referred to as a transcript of judgment. It bears the seal, and is signed by the deputy clerk, of that court. Each of the filings contained in the record is file stamped and separately authenticated by the clerk of the court. The record contains a judgment of conviction, signed by the circuit court judge, convicting Gales, pursuant to a plea agreement, of armed sexual battery and strong armed robbery in violation of the previously cited Florida statutes. The judgment of conviction contains Gales' fingerprints. The record also contains a sentencing order, signed by the circuit court judge, sentencing Gales to 12 years' imprisonment on the charge of sexual battery and 12 years' imprisonment for the robbery, with the sentences to be served concurrently. The record reflects that Gales was represented by counsel at the time of his plea agreement, convictions, and sentencing.

In short, we conclude that exhibit 229 is sufficiently self-authenticating and was properly admitted into evidence for purposes of proving Gales' previous conviction of a crime involving

the use or threat of violence to the person. Gales' assignment of error is without merit.

## 10. JURY INSTRUCTIONS

### (a) Assignments of Error

(1) The district court refused to amend instruction No. 2 to indicate that aggravating circumstances were nothing more than accusations that the State must prove beyond a reasonable doubt;

(2) the district court did not give Gales' suggested paragraph for instruction No. 2 stating that the fact that Gales had been convicted of two murders did not, standing alone, establish that Gales had murdered more than one person during the same criminal transaction;

(3) the wording of instruction No. 2 required the jury to find that Latara's murder was especially heinous, atrocious, or cruel if it believed that she was sexually assaulted; and

(4) the jury should have been instructed to unanimously find that the murder was either especially heinous, atrocious, or cruel, and have each one separately listed on the verdict form.

### (b) Standard of Review

■ Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Al-Sayagh*, 268 Neb. 913, 689 N.W.2d 587 (2004). See, also, *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002).

### (c) Analysis

#### *(i) Reasonable Doubt*

■ Gales argues that instruction No. 2 did not instruct the jury that aggravating circumstances were simply accusations and that the State must prove them beyond a reasonable doubt. Aggravating circumstances must be proved beyond a reasonable doubt. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). However, instruction No. 2 stated in part:

> Aggravating circumstances are those which increase the guilt or enormity of the crime or add to its injurious consequences. Aggravating circumstances are reasons why the defendant should be sentenced to death. The State has the

burden of proving the truth of an aggravating circumstance by evidence beyond a reasonable doubt. If you have a reasonable doubt as to whether an aggravating circumstance is true, or you cannot unanimously agree beyond a reasonable doubt that an aggravating circumstance is true, you must find it to be not true.

The jury had also been instructed before the sentencing hearing that the State's burden was to prove aggravating circumstances beyond a reasonable doubt. The jury was instructed to the same effect in the instructions relating to each aggravating circumstance and again after the aggravating circumstances were explained. The verdict form required the jury to determine whether each aggravating circumstance had been found beyond a reasonable doubt. In addition, the jury was instructed that the "[s]tatements, arguments, and questions of the lawyers for the [S]tate and the defendant" were not evidence from which they were to find the facts.

It is not error for a trial court to refuse to give a defendant's requested instruction where the substance of the requested instruction was covered in the instructions given. *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002). When the instructions are read as a whole, the jury was more than amply instructed that the State was required to prove, from the evidence adduced, the existence of aggravating circumstances beyond a reasonable doubt.

### (ii) Multiple Murders During Same Criminal Transaction

The jury was instructed that in order to find the aggravating circumstance of "murder committed at the time the offender also committed another murder," it must find the essential element that "[t]he offender murdered more than one person during the same criminal transaction." Gales argues that the jury should have been instructed that Gales' convictions for two murders did not, standing alone, establish this aggravating circumstance. However, the

substance of Gales' instruction is implicit in the instruction that was given, which directed the jury to find this aggravating circumstance only if more than one person was murdered "during the same criminal transaction." This was a correct statement of the law, see *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *disapproved on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990); was not misleading; and adequately covered the issues supported by the pleadings and evidence. See *Pruett, supra*. Therefore, we find no reversible error with respect to this instruction.

### (iii) Especially Heinous, Atrocious, or Cruel

Finally, the jury was instructed that in order to find that the murder of Latara was especially heinous, atrocious, or cruel, it must find the essential element that "[t]he defendant inflicted serious mental anguish or serious physical abuse — meaning sexual abuse — on the victim, Latara Chandler, before her death. Mental anguish includes a victim's uncertainty as to his or her ultimate fate." Gales' counsel objected and stated:

> I think the reason that the Court has provided this instruction the way it has is the Court previously found that sexual abuse was the reason they found that the murder was especially heinous, atrocious, or cruel. The problem that I have with that is the instruction appears that if they just find that Latara Chandler was sexually abused, that that alone makes it especially heinous, atrocious, or cruel, and I would argue to this Court that based on the findings of the case law in the State of Nebraska, on the basis of that, that there is more than just the sexual assault. It's the facts and circumstances leading up and during and after the sexual assault that occurred that goes into that, and by this instruction, the jury isn't going to be instructed to take that into account to determine if the sexual abuse is, in fact, heinous, atrocious, and cruel.

This court has narrowed the class of especially heinous, atrocious, or cruel murders to include those involving torture, sadism, or sexual abuse. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). This circumstance includes a pitiless crime which is unnecessarily torturous to the victim. *State v. Reeves*, 239 Neb. 419, 476 N.W.2d 829 (1991). Thus, the term "especially heinous,

atrocious, or cruel" is limited to cases where torture, sadism, or the imposition of extreme suffering exists, or where the murder was preceded by acts performed for the satisfaction of inflicting either mental or physical pain or when such pain existed for any prolonged period of time. See, *Ryan, supra*; *Reeves, supra*; *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991). This class includes murders involving torture, sadism, or sexual abuse. *Ryan, supra*; *Reeves, supra*. In other words, this prong must be looked upon through the eyes of the victim. *Ryan, supra*. In *Ryan*, 248 Neb. at 447-48, 534 N.W.2d at 793-94, we explained:

> The U.S. Supreme Court has held the words "heinous," "atrocious," and "cruel" to be unconstitutionally vague in an Oklahoma sentencing statute which is very comparable to Nebraska's § 29-2523(1)(d). See *Maynard v. Cartwright*, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988). See, also, *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980) (holding Georgia's " 'outrageously or wantonly vile, horrible or inhuman' " aggravating circumstance to be unconstitutional because the Georgia court failed to limit the statute in such a way as to provide a principled distinction between death penalty and non-death-penalty cases).
>
> In both *Maynard* and *Godfrey*, the defendant was sentenced to death by a jury which had been instructed in only the bare language of the sentencing statute or in language which was similarly vague.
>
> Likewise, the U.S. Court of Appeals for the Eighth Circuit has found the text of Nebraska's aggravating circumstance (1)(d), standing alone, to be constitutionally insufficient. *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *reh'g denied* 951 F.2d 895 (8th Cir. 1991), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992). However, "a state supreme court may salvage a facially-vague statute by construing it to provide the sentencing body with objective criteria for applying the statute." *Moore v. Clarke*, 904 F.2d at 1229. The Eighth Circuit, in several recent cases, has looked beyond the text of § 29-2523(1)(d) to determine whether (1)(d) has been limited and defined by this court in such a way as to provide sentencing bodies in

Nebraska with objective criteria for the application of that aggravating circumstance.

The Eighth Circuit has held that the first prong of aggravating circumstance (1)(d) of § 29-2523, narrowed by this court's decisions defining the phrase "especially heinous, atrocious, cruel" to mean unnecessarily torturous to the victim, satisfies the constitutional requirements of *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Godfrey v. Georgia, supra*; and *Maynard v. Cartwright, supra*. See *Harper v. Grammer*, 895 F.2d 473 (8th Cir. 1990).

Therefore, we concluded that the first prong of aggravating circumstance (1)(d) was facially constitutional to the extent that it had been narrowed and defined by this court. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). See *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). See, also, *Bell v. Cone*, 543 U.S. 447, 450, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (reversing grant of writ of habeas corpus, based on presumption that Tennessee Supreme Court cured error in jury instruction by applying narrowing construction of " 'heinous, atrocious, or cruel' " aggravator). Furthermore, the Eighth Circuit has specifically approved our identification of sexual abuse as an objective identifier of the existence of the first prong of aggravating circumstance (1)(d).

We conclude that sexual abuse was an objective element that satisfied and appropriately limited the definition of aggravating circumstance (1)(d) under the law of Nebraska . . . . We are further satisfied that a finding of sexual abuse is an objective factor that appropriately and constitutionally narrows the definition of the "especially heinous" phrase.

*Williams v. Clarke*, 40 F.3d 1529, 1537 (8th Cir. 1994).

In this case, as previously noted, the jury was instructed that in order to find that the murder of Latara was especially heinous, atrocious, or cruel, it must find that "[t]he defendant inflicted serious mental anguish or serious physical abuse — meaning sexual abuse — on the victim, Latara Chandler, before her death. Mental anguish includes a victim's uncertainty as to his or her ultimate fate." With respect to the phrase "sexual abuse," the court's instruction was constitutionally sound and consistent

with Nebraska law as explained in *Ryan, supra*. Neither Gales' objection at trial, nor his appellate brief, take issue with the district court's use of the phrase "serious mental anguish," and whether that phrase is consistent with prior Nebraska law is not before us in this appeal. We note, however, that the phrase " '[m]ental anguish includ[ing] a victim's uncertainty as to his ultimate fate' " has been held not to be unconstitutionally vague. See *Tuilaepa v. California*, 512 U.S. 967, 974, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994), quoting *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990).

Gales also contends that the verdict form with respect to this aggravating circumstance should have provided that the jury must unanimously agree the crime was either especially heinous, atrocious, or cruel, and have each one listed separately on the verdict form. We have stated that the two prongs of aggravating circumstance (1)(d) describe, in the disjunctive, two separate circumstances which may operate in conjunction with or independently of one another. *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982). However, we have never indicated that the words "heinous," "atrocious," and "cruel" operate disjunctively; rather, as previously stated, we have considered and construed the phrase as a whole, and Gales presents no argument explaining why our previous decisions are incorrect on that point. An instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given. *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003). Gales' proposed instruction was not a correct statement of the law, and the district court did not err in rejecting it.

### 11. REBUTTAL ARGUMENT IN AGGRAVATION HEARING

#### (a) Assignment of Error

The State should not have been allowed rebuttal argument during the aggravation hearing.

#### (b) Standard of Review

The general conduct of the trial rests within the discretion of the trial court. *State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992).

## (c) Analysis

Gales argues that the district court erred in permitting the State, in closing arguments of the aggravation hearing, to have a rebuttal argument. Section 29-2520(4)(d) simply provides that "[a]fter the presentation and receipt of evidence at the aggravation hearing, the state and the defendant or his or her counsel may present arguments before the jury as to the existence or nonexistence of the alleged aggravating circumstances." Gales contends that since § 29-2520(4)(d) does not specifically allow the State rebuttal, the district court erred in permitting it.

However, Neb. Rev. Stat. § 29-2016(6) (Reissue 1995), which generally governs trial procedure in criminal cases, provides that "when the evidence is concluded, unless the case is submitted without argument, the counsel for the state shall commence, the defendant or his counsel follow, and the counsel for the state conclude the argument to the jury." This is consistent with the general rule that the party with the burden of proof is entitled to open and close argument. See *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989). We find no abuse of discretion in the district court's decision to apply § 29-2016(6) to the aggravation hearing.

## 12. Ineffective Assistance of Counsel

### (a) Assignments of Error

(1) Gales received ineffective assistance of counsel at his original trial because trial counsel

(a) stipulated to Judy's deposition testimony,

(b) did not call Gales' wife as an alibi witness, and

(c) did not allow Gales to testify, and

(2) Gales' counsel on his first direct appeal was ineffective for not assigning any trial errors.

### (b) Standard of Review

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated

in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Benzel, ante* p. 1, 689 N.W.2d 852 (2004).

### (c) Analysis

Having just articulated the standard of review, however, we observe that the record contains no findings by the district court to review. This is because the issue of ineffective assistance of counsel was not presented to the district court.

Since the allegations of ineffective assistance of counsel now advanced by Gales were not pertinent to the district court's task in resentencing Gales following our decision in *Gales I*, it is not surprising that the parties and the district court would not consider the issue. But because of this, we conclude that the record is insufficient for us to resolve Gales' arguments.

This appeal was taken from a resentencing proceeding held pursuant to the mandate issued by this court pursuant to our opinion in *Gales I*. When a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate. The order of an appellate court is conclusive on the parties, and no judgment or order different from, or in addition to, that directed by the appellate court can be entered by the trial court. *State v. Hochstein and Anderson*, 262 Neb. 311, 632 N.W.2d 273 (2001). Here, our opinion in *Gales I*, 265 Neb. at 636, 658 N.W.2d at 632, vacated Gales' death sentences on both counts of first degree murder and remanded the causes to the district court "with directions to conduct a new penalty phase hearing and to resentence Gales on those counts." The allegations of ineffective assistance of counsel now raised by Gales were beyond the scope of the district court's jurisdiction pursuant to our mandate in *Gales I*, and consequently, the allegations are also inappropriate for us to address in this appeal.

When the issue of ineffective assistance of counsel has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *State v. Brown*, 268 Neb. 943, 689 N.W.2d 347 (2004). Because the issues raised by Gales

were beyond the scope of this resentencing proceeding and we conclude that the matter necessitates an evidentiary hearing, we will not address Gales' ineffective assistance of counsel claims.

The evident reason for Gales' argument in this appeal is that in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). However, because the record before us does not allow us to properly evaluate Gales' claims, we decline to consider them in this proceeding.

### 13. SUFFICIENCY OF EVIDENCE

#### (a) Assignment of Error

Gales argues that his motion for a new aggravation hearing should have been granted because there was insufficient evidence that Latara's murder was especially heinous, atrocious, or cruel. In addition, in a capital sentencing proceeding, this court conducts an independent review of the record to determine if the evidence is sufficient to support imposition of the death penalty. See *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *cert. denied* 543 U.S. 1128, 125 S. Ct. 1088, 160 L. Ed. 2d 1081 (2005).

#### (b) Standard of Review

We have stated that in reviewing a sentence of death on appeal, we conduct a de novo review of the record to determine whether the aggravating and mitigating circumstances support the imposition of the death penalty. *Id.* However, our decisions have not specifically explained our standard of review with respect to the trier of fact's finding that a particular aggravating circumstance was proved. That issue is particularly pertinent in this case, as this is the first direct appeal to be taken from a sentence imposed pursuant to the jury findings required by L.B. 1.

Generally, in reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence. *State v. Canady*,

263 Neb. 552, 641 N.W.2d 43 (2002). When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004).

The question is whether findings of aggravating circumstances, as factual findings now made by a jury, are subject to this standard of review. The overwhelming majority of jurisdictions to have considered the issue have applied this familiar standard of appellate review, or a similarly deferential standard, to a fact finder's determination of the existence of aggravating circumstances. See, *State v. Bell*, 359 N.C. 1, 603 S.E.2d 93 (2004); *Hutchinson v. State*, 882 So. 2d 943 (Fla. 2004); *Washington v. State*, 808 N.E.2d 617 (Ind. 2004); *State v. Edwards*, 116 S.W.3d 511 (Mo. 2003) (en banc), *cert. denied* 540 U.S. 1186, 124 S. Ct. 1417, 158 L. Ed. 2d 92 (2004); *Olsen v. State*, 67 P.3d 536 (Wyo. 2003); *State v. Stevens*, 78 S.W.3d 817 (Tenn. 2002); *State v. Honie*, 57 P.3d 977 (Utah 2002); *State v. Kleypas*, 272 Kan. 894, 40 P.3d 139 (2001); *Abshier v. State*, 28 P.3d 579 (Okla. Crim. App. 2001); *People v. Hart*, 20 Cal. 4th 546, 976 P.2d 683, 85 Cal. Rptr. 2d 132 (1999); *State v. Johnson*, 291 Mont. 501, 969 P.2d 925 (1998); *Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998); *State v. Porter*, 130 Idaho 772, 948 P.2d 127 (1997); *Com. v. Lee*, 541 Pa. 260, 662 A.2d 645 (1995); *State v. Ross*, 230 Conn. 183, 646 A.2d 1318 (1994); *Barnes v. State*, 876 S.W.2d 316 (Tex. Crim. App. 1994) (en banc); *Canape v. State*, 109 Nev. 864, 859 P.2d 1023 (1993). Cf. *State v. Ball*, 824 So. 2d 1089 (La. 2002). See, also, *Lewis v. Jeffers*, 497 U.S. 764, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990) (applying standard of review to federal habeas review of state court's finding of aggravating circumstances). But see, *People v. Dunlap*, 975 P.2d 723 (Colo. 1999) (en banc); *State v. Djerf*, 191 Ariz. 583, 959 P.2d 1274 (1998) (conducting statutorily required independent reviews).

This application of the standard of review for a criminal conviction to findings of aggravating circumstances is sensible and consistent with our established law. First, unlike the ultimate sentencing determination made by the sentencing panel, a finding of

the existence of an aggravating circumstance is a factual finding, and factual findings are generally affirmed where there is sufficient evidence to support them. It would make little sense to treat the jury's finding of an aggravating circumstance differently than the other findings of fact with which the jury is entrusted. See, generally, *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989).

Moreover, *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), stands for the proposition that an aggravating circumstance must be found by a jury beyond a reasonable doubt in order to satisfy the Sixth Amendment. We do not read *Ring* as requiring an appellate court to apply any particular standard of review to such a finding. Nonetheless, proper regard for the Sixth Amendment principle articulated in *Ring* suggests that we should treat the jury's findings of aggravating circumstances with the same degree of respect we give its findings of the elements of first degree murder.

Consequently, we hold that when reviewing the sufficiency of the evidence to sustain the trier of fact's finding of an aggravating circumstance, the relevant question for this court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the aggravating circumstance beyond a reasonable doubt. See *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004). However, as previously stated, when considering the sentencing panel's weighing of the aggravating and mitigating circumstances, and the sentencing panel's determination that the mitigating circumstances found did not approach or exceed the weight to be given to the aggravating circumstances, this court conducts a de novo review of the record to determine whether the aggravating and mitigating circumstances support the imposition of the death penalty. See *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *cert. denied* 543 U.S. 1128, 125 S. Ct. 1088, 160 L. Ed. 2d 1081 (2005).

### (c) Analysis

Gales' primary argument is based upon *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985), *disapproved on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). In that case, the defendant was convicted of first degree murder and

sentenced to death based upon his confession that he had murdered his victim and then performed sexual acts on her. On appeal, the defendant challenged the district court's finding that the murder was "especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." See § 29-2523(1)(d).

This court concluded that aggravating circumstance (1)(d) was not present on the facts of that case. The court noted that according to the defendant's confession, he strangled the victim and then committed sexual acts on her after she was either unconscious or dead. The court stated that in order for aggravating circumstance (1)(d) to be present, the method of killing must "entail something more than the ordinary circumstances which attend any death-dealing violence." *Hunt*, 220 Neb. at 725, 371 N.W.2d at 721. Since the victim in *Hunt* was not conscious when the defendant committed his sexual acts, the court concluded that "[a]lthough the method by which defendant achieved sexual gratification may be accurately described as exceptionally heinous and atrocious, and as manifesting exceptional depravity by ordinary standards of morality and intelligence, the murder itself, given the inherent nature of a killing, cannot." *Id.* at 726, 371 N.W.2d at 721.

Gales argues that pursuant to *Hunt, supra*, the murder of Latara was not especially heinous, atrocious, or cruel. However, as will be explained below, the circumstances of *Hunt* are distinguishable from those present in this case. The record here contains sufficient evidence to support the jury's finding that Latara's murder was especially heinous, atrocious, or cruel.

Dr. Jerry Jones, a coroner's pathologist, testified at the aggravation hearing regarding the results of the autopsy he performed on Latara. Jones testified that Latara died of asphyxiation caused by manual strangulation, specifically, pressure to the neck. Jones was unable to exclude the possibility of rape. Jones testified that a person may lose consciousness from manual strangulation in "perhaps 10 to 15 seconds," but that pressure on the neck for 4 to 5 minutes was required for death to result. Jones opined that hemorrhaging present on Latara's neck was "produced by pressure to the neck and probably also by struggle of the individual to the pressure applied to the neck." A condom was found in the

bathroom of Judy's apartment and genetic material was found on the condom that DNA testing showed to be consistent with the known genetic profiles of Latara and Gales.

One inference from the evidence presented at the aggravation hearing—the inference advocated by Gales—is that Latara was strangled, lost consciousness after 10 to 15 seconds, and was sexually assaulted after she lost consciousness. It is based on this inference that Gales argues for the application of *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985). However, that is not the only inference supported by the evidence. The record also supports a finding that Latara was sexually assaulted by Gales, struggled against her attacker, and was rendered unconscious by pressure to the neck during or after the sexual assault. We are required to give the benefit of this reasonable inference to the State. See *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

As previously discussed, we have narrowed the phrase "especially heinous, atrocious, or cruel" to include murders involving torture, sadism, or sexual abuse. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); *State v. Reeves*, 239 Neb. 419, 476 N.W.2d 829 (1991). See, also, *Williams v. Clarke*, 40 F.3d 1529 (8th Cir. 1994). We have already concluded that the jury was properly instructed that Latara's murder was especially heinous, atrocious, or cruel if Gales inflicted "serious physical abuse — meaning sexual abuse — on the victim, Latara Chandler, before her death." Taken in the light most favorable to the State, the evidence was sufficient for the jury to find beyond a reasonable doubt that Latara's murder was especially heinous, atrocious, or cruel.

We also conclude that the record supports the sentencing panel's determination that the mitigating circumstances found did not approach or exceed the weight to be given to the aggravating circumstances found in this case. The mitigating factors found to be present—Gales' relationship with his family and his ability to adapt to life in prison—are not compelling and do not approach the weight to be given to the aggravating circumstances that the jury found. On our de novo review of the record, we find that the evidence is sufficient to support imposition of the death penalty.

14. PROPORTIONALITY REVIEW

(a) Comparison to Other Cases

■ Pursuant to § 29-2521.03, this court is required, upon appeal, to determine the propriety of a death sentence by conducting a proportionality review. This review requires us to compare the aggravating and mitigating circumstances of this case with those present in other cases in which the death penalty was imposed, and ensure that the sentence imposed in this case is no greater than those imposed in other cases with the same or similar circumstances. See, *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001); *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).

In this case, as we have already noted, the aggravating circumstances are severe, and the mitigating circumstances are far from compelling. We have reviewed our relevant decisions on direct appeal from other cases in which aggravating and mitigating circumstances were found and the death penalty was imposed by the district court. See, e.g., *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *cert. denied* 543 U.S. 1128, 125 S. Ct. 1088, 160 L. Ed. 2d 1081 (2005); *Dunster, supra*; *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000), *overruled on other grounds, Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Bjorklund, supra*; *Lotter, supra*; *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), *disapproved on other grounds, State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000); *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990); *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986); *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986); *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985); *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984); *State v. Jones*, 213 Neb. 1, 328 N.W.2d 166 (1982); *State v. Harper*, 208 Neb. 568, 304 N.W.2d 663 (1981); *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980); *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979); *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979); *State v. Peery*, 199 Neb. 656, 261 N.W.2d 95 (1977); *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *disapproved on other grounds, State v.*

*Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990); *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977), *disapproved on other grounds, Palmer, supra*; *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977); *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977), *disapproved on other grounds, Palmer, supra.*

We take particular note of the circumstances presented in *Joubert, supra*, in which the defendant was convicted of the murders of two children and sentenced to death based upon aggravating circumstances (1)(a), (b), and (d), and *Williams, supra*, in which the defendant was convicted of two murders and one sexual assault and sentenced to death based upon the same aggravating circumstances found to exist in this case with respect to Latara. Having reviewed the relevant cases, we find that the imposition of sentences in this case is proportional to that in the same or similar circumstances.

### (b) Federal Due Process

We are aware of the decision in *Palmer v. Clarke*, 293 F. Supp. 2d 1011 (D. Neb. 2003), *overruled on other grounds, Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004), in which the U.S. District Court for the District of Nebraska held that our method of appellate proportionality review violates the U.S. Constitution. We have respect for our colleague on the federal bench. However, we disagree with the determinations of Nebraska law upon which the court's analysis was based. Because this appeal requires us to engage in the same process of proportionality review that the court held unconstitutional, it is our responsibility to respond to the court's analysis.

Proportionality review is not constitutionally mandated. *Pulley v. Harris*, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). It exists in Nebraska by virtue of § 29-2521.01 et seq., which direct this court to conduct a proportionality review in each appeal in which a death sentence is imposed. The U.S. District Court's holding was premised on the principle, previously cited in this opinion, that where a state creates a right, such as a defendant's right to proportionality review of his or her sentence, the Due Process Clause entitles the defendant to procedures to ensure that the right is not arbitrarily denied. *Palmer v. Clarke, supra*, citing *Foster v. Delo*, 39 F.3d 873 (8th Cir. 1994). The court held that our

process of appellate proportionality review violates that principle in three ways. First, the court held that we erred in *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986), when we "effectively rewrote the [proportionality review] statute to require comparison to other death sentences rather than to other 'criminal homicides' or at least to all other first degree murders." (Emphasis omitted.) *Palmer v. Clarke,* 293 F. Supp. 2d at 1041-42. Second, the court held that we denied the defendant in *State v. Palmer, supra,* his constitutional right to a two-tiered review process in our application of a different comparison in our proportionality review than the sentencing panel had used. Finally, the court held that our proportionality review was an exercise in appellate resentencing that was not permitted by state law. We will address each of these points in turn.

### (i) Interpretation of Proportionality Review Statutes

First, we revisit our decision in *State v. Palmer, supra,* which the U.S. District Court found to be erroneous. That decision relied, in large measure, upon our earlier decision in *State v. Moore,* 210 Neb. 457, 316 N.W.2d 33 (1982), in which we held that a literal application of § 29-2521.01 et seq. would violate the separation of powers provisions of the Nebraska Constitution. We explained that the limits of the jurisdiction conferred upon us by the constitution may not be increased or extended by legislative enactment. *Id.* We determined that applied literally, § 29-2521.01 et seq. would require us to gather evidence and examine prosecutorial discretion, which are executive and not judicial functions. We further determined that the statutes, literally applied, would intrude on the judicial function. Therefore, we construed the statutes to require an appellate comparison of only those cases in which a defendant had been convicted of first degree murder. See *Moore, supra.*

In *State v. Palmer, supra,* we further limited the scope of our review. We determined that a literal reading of the statutes would effectively repeal the death penalty, which we understood to be against the Legislature's intent. In order to effectuate the Legislature's intent, within the constitutional limitations identified in *Moore, supra,* we concluded that our proportionality review should include only those cases in which the death penalty was imposed. *State v. Palmer, supra.*

 The principles of statutory interpretation which led us to that conclusion are well established. A penal statute must be construed so as to meet constitutional requirements if such can be reasonably done. *State v. Divis*, 256 Neb. 328, 589 N.W.2d 537 (1999). It is the duty of this court to give a statute an interpretation which meets constitutional requirements, if it can. *State v. Manley*, 189 Neb. 415, 202 N.W.2d 831 (1972). Although a penal statute must be strictly construed, it is to be given a sensible construction, and general terms are to be limited in their construction and application so as to avoid injustice, oppression, or an absurd consequence. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994). In construing a statute, it is presumed that the Legislature intended a sensible, rather than an absurd, result. *State v. Stein*, 241 Neb. 225, 486 N.W.2d 921 (1992). In the exposition of statutes, the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice or absurdity. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998). In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *State v. Portsche*, 261 Neb. 160, 622 N.W.2d 582 (2001).

 In other words, our holdings in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), and *Moore, supra*, were based upon this court's rules of statutory interpretation, undertaken in a good-faith attempt to effectuate the intent of the Legislature and remain consistent with the requirements of our state Constitution. Those holdings are certainly not immune from criticism, and we respect our federal colleague's principled disagreement with our exposition of state law. But *it is* a matter of state law we are discussing, and we are the final arbiter of Nebraska law. *Reeves v. Hopkins*, 76 F.3d 1424 (8th Cir. 1996). "By performing an exhaustive review of Nebraska statutory law in an attempt to show the Nebraska Supreme Court the inadequacy of its interpretation of its own authority under its own law, the district court exceeded the bounds of federal court authority." *Id.* at 1427, citing *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (it is not province of federal courts to reexamine state court determinations of state law questions).

Consequently, we also respectfully disagree with the U.S. District Court's conclusion that our alleged error in *State v. Palmer, supra,* amounted to a violation of the federal Due Process Clause. The court's reasoning was that our interpretation of state law arbitrarily denied the defendant a state-created right. But state law can only afford a defendant an appellate proportionality review that is consistent with the requirements of the Nebraska Constitution. The scope of the due process liberty interest created by state law is, as a question of state law, defined by this court. Proportionality review is not constitutionally required. *Pulley v. Harris,* 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). The Due Process Clause, as relevant here, only requires that defendants receive the process they are due under Nebraska law, as we have explained it. Some members of this court have expressed concerns about our holding in *State v. Palmer, supra.* See *State v. Lotter,* 255 Neb. 456, 586 N.W.2d 591 (1998) (Connolly, J., concurring; Gerrard, J., concurring, joined by Stephan, J.). But there is no question that our holding in *State v. Palmer, supra,* is the law.

### (ii) Two-Tiered Review

The U.S. District Court further held that the defendant's right to due process was violated when we applied a different proportionality review than was applied by the sentencing court. The court found that the defendant "had a statutory right to: (1) have the sentencing panel conduct a proportionality review, and (2) have the determination of that sentencing panel reviewed in the Nebraska Supreme Court." *Palmer v. Clarke,* 293 F. Supp. 2d 1011, 1043 (D. Neb. 2003), *overruled on other grounds, Schriro v. Summerlin,* 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). The court concluded that our "[use of] a different universe of defendants" denied the defendant the benefit of the "two-tiered" scheme of the statutes. *Id.* The court's conclusion, however, is based on a misunderstanding of the requirements of Nebraska law.

The court was correct insofar as Nebraska's capital sentencing statutes create a two-tier sentencing process and differentiate between the role performed by the sentencing panel and the role of this court in reviewing that sentence. See *State v.*

*Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000). But the proportionality review performed by this court is not part of that process. Instead, this court's proportionality review in capital cases is conducted independently from the sentencing panel's proportionality review and our appellate review of the sentencing decision made by the trial court.

This conclusion is derived from an examination of the sentencing scheme set forth in § 29-2520 et seq., which is in relevant part unchanged from the sentencing scheme in effect at the time that *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), was decided. Section 29-2521(3) provides that the sentencing panel shall receive evidence, from the parties, regarding "sentence excessiveness or disproportionality as provided in subdivision (3) of section 29-2522." Accord § 29-2520(4)(h). The sentencing panel is to consider in imposing sentence, pursuant to § 29-2522,

> (1) Whether the aggravating circumstances as determined to exist justify imposition of a sentence of death;
>
> (2) Whether sufficient mitigating circumstances exist which approach or exceed the weight given to the aggravating circumstances; or
>
> (3) *Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.*

(Emphasis supplied.)

In short, these provisions charge the sentencing court with conducting a proportionality review as part of determining whether the death sentence should be imposed. We may, of course, examine that determination on appeal.

This court's proportionality review, on the other hand, occurs pursuant to § 29-2521.03, which directs us to, "upon appeal, determine the propriety of the sentence in each case involving a criminal homicide by comparing such case with previous cases involving the same or similar circumstances." The statutory scheme clearly contemplates that this court should conduct an independent review of the proportionality of a death sentence, not merely an appellate review of the proportionality determination made by the sentencing court. While the sentencing court conducts a proportionality review that can be appealed to this court,

the statutes clearly charge this court with conducting its own independent proportionality review.

Consequently, we disagree with the U.S. District Court's conclusion that the defendant's due process rights were violated by our consideration of different cases from those that may have been considered by the sentencing court. The court was correct in stating that the defendant had the right to a two-tiered sentencing procedure in which this court reviews the determination of the sentencing panel. But the defendant *also* has a right to an independent proportionality review conducted by this court, the scope of which is discussed above. This court's consideration of different evidence in its independent proportionality review does not implicate the two-tiered appellate process we described in *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000). This court's independent proportionality review did not deprive the defendant of due process; to the contrary, principles of due process required us to conduct an independent proportionality review to the extent available under our authoritative interpretation of Nebraska law.

### (iii) Appellate Resentencing

Finally, in a closely related analysis, the U.S. District Court concluded that our independent proportionality review " 'effectively resentenced' " the defendant. *Palmer v. Clarke*, 293 F. Supp. 2d 1011, 1044 (D. Neb. 2003), *overruled on other grounds, Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). Because the Nebraska statutes do not authorize appellate reweighing and resentencing, see *Reeves, supra*, the court found this to be another basis for its conclusion that the defendant's due process rights were violated.

But while the Nebraska statutes do not authorize this court to reweigh aggravating and mitigating circumstances as a basis for resentencing a defendant, they do expressly authorize—in fact, require—this court to conduct an independent review of the proportionality of the defendant's sentence. This court did not act as an "unreviewable sentencing panel," see *Palmer v. Clarke*, 293 F. Supp. 2d at 1044; rather, we both reviewed the sentencing court's determination *and* conducted the independent proportionality review required by state law.

In short, in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), as in the instant case, this court "undertook its proportionality review in good faith" and found that the defendant's sentence was proportional to the sentences imposed in similar cases. See *Walton v. Arizona*, 497 U.S. 639, 656, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990), *overruled on other grounds, Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). Accord, e.g., *LaRette v. Delo*, 44 F.3d 681 (8th Cir. 1995); *Personal Restraint of Benn*, 134 Wash. 2d 868, 952 P.2d 116 (1998). The U.S. Constitution does not require the federal courts to look behind that conclusion. See *id.*

## IV. CONCLUSION

For the foregoing reasons, we reject each of Gales' assignments of error. We have independently reviewed Gales' sentences and find that the aggravating and mitigating circumstances support the imposition of the death penalty and that the imposition of sentence was not disproportionate to that in similar cases. We affirm the judgment of the district court.

AFFIRMED.

HENDRY, C.J., not participating.